Jimmie D. BROOKS, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–1129C.

United States Court of Federal Claims.

Feb. 28, 2006.

Jimmie D. Brooks, Corona, CA, plaintiff, pro se.

Douglas K. Mickle, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Maj. Rebecca Ausprung, United States Air Force, of counsel.

## MEMORANDUM OPINION AND ORDER

CHRISTINE O.C. MILLER, Judge.

This case is before the court after briefing on defendant's motion to dismiss. The issues for decision are (1) whether the United States Court of Federal Claims lacks subject matter jurisdiction pursuant to RCFC

12(b)(1) where plaintiff's claims for military retirement pay are brought outside the six-year period prescribed for actions under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), or, alternatively, whether plaintiff's claims should be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted where plaintiff has failed to allege facts demonstrating that he is entitled to military retirement pay; (2) whether plaintiff's claim for $20,000,000.00 in compensatory damages for libel, slander and defamation of character should be dismissed in accordance with RCFC 12(b)(1) for lack of subject matter jurisdiction; and (3) whether plaintiff's claim for a $300,000.00 life insurance policy should be dismissed under RCFC 12(b)(6) for failure to state a claim upon which relief may be granted. Argument is deemed unnecessary. While the court notes plaintiff's record of long-standing commitment to serving in the Armed Forces of the United States, statute and binding precedent dictate that plaintiff's claims be dismissed.

## FACTS

Jimmie D. Brooks ("plaintiff") is a former commissioned officer in the United States Army. On February 28, 1995, in recognition of his honorable service, plaintiff was transferred to the Retired Reserves. Believing himself entitled to military retirement pay, plaintiff contacted the United States Army Personnel Command (the "USARPERCOM").[1] Plaintiff claims that a clerk informed him, via telephone, that he had verified plaintiff's records and plaintiff was eligible for military pay. The unidentified clerk instructed plaintiff to complete an application packet and submit it following his sixtieth birthday.

On June 28, 1997, plaintiff submitted his Application for Retired Pay Benefits. Nicholas J. Ryan, Production Control Chief at the USARPERCOM replied in a letter dated July 8, 1997. The letter informed plaintiff of his "point of contact" and noted that his certification would be passed along to Retire Pay, Defense Finance and Accounting Service, Cleveland, Ohio. Plaintiff maintains that this language, along with the letter's assertion that he would "become eligible" for his first retirement payment one month after his sixtieth birthday, clearly indicate that plaintiff is "certified for and will receive retired pay." Complaint filed Oct. 20, 2005, ¶ 5. However, as plaintiff acknowledges, subsequent calls to the USARPERCOM for status reports revealed that his application was still "being processed and would be completed soon." *Id.*

Bob Jennings, Retirement Services Chief, wrote plaintiff on January 14, 1998, that he was ineligible to receive retired pay. The letter explained:

> To be eligible for retired pay at age 60, under Title 10, United States Code, Sections 12731–12737, a Reserve soldier or former Reserve soldier must have completed a minimum of 20 qualifying years of service, the last 8 years of which must have been in a Reserve component....

> An audit of your military records show[s] that you completed 8 years, 7 months, and 6 days of qualifying service for retirement .... Accordingly, you are ineligible to receive retired pay.

Mr. Jennings further explained that a qualifying year of service was one in which a reserve soldier has earned at least fifty retirement points. While it is undisputed that plaintiff has earned 3,022 retirement points, the majority of these points were earned between 1960 and 1967; plaintiff did not earn the points at a minimum of fifty per year.

Plaintiff appealed this decision in an April 30, 1998 letter to President Clinton and a July 7, 1998 letter to the Office of the Assistant Secretary of Defense for Reserve Affairs. Henry J. Schweiter, Deputy Assistant Secretary of Manpower and Personnel, Office of the Assistant Secretary of Defense, replied to plaintiff's April letter in a letter dated July 6, 1998. Mr. Schweiter bolstered the reasoning set forth in Mr. Jennings's letter with further explanation of the retirement system.

> To be eligible for retired pay for non-regular service, a member must complete a

---

1. While defendant uses the term the United States Army Personnel Command ("USARPERCOM"), plaintiff refers to the same entity as the United States Army Personnel Center ("USARPERCEN"). For the sake of clarity, the court adopts the former referent.

minimum of 20 years of qualifying service and serve the last eight years of qualifying service ... as a member of a Reserve component. A satisfactory year of qualifying service is any year in which the member is awarded at least 50 retirement points....

[Y]ou have 22 years of total service for longevity purposes of which only 16 years were served as a member of the Army Reserve. In addition, your point totals indicate that you did not train regularly for 12 of those 16 years that you served in the Army Reserve. Consequently, you have not achieved 20 years of qualifying service and are therefore not eligible for retired pay under the law....

[Y]ou note that you have earned over 3,000 retirement points during 22 years of the military service...[T]he total number of retirement points accumulated, during a career, [is] not considered in determining eligibility for Reserve retired pay ....

You also contend that written communications from [USARPERCOM] acknowledging receipt of your application for retired pay and extending congratulations on the occasion of your retirement, constitutes entitlement to retired pay at age 60. In fact, the law (10 U.S.C. 12731) very clearly states that the Secretary concerned shall notify each person who has completed the years of service required for eligibility for retired pay under chapter 1223. This notice, frequently referred to as the "20–year letter," must be sent in writing within one year after the individual completes the satisfactory service. It is my understanding that you have not received such a notice. Had you received such written notice of eligibility for retired pay, section 12738 of title 10, United States Code, stipulates that it could not be denied or revoked on the basis of any error, miscalculation, misinformation or administrative determination, unless it resulted directly from fraud or misrepresentation.

Plaintiff's July 7 letter was forwarded to the Office of the Assistant Secretary of Manpower and Reserve Affairs, and on July 14, 1998, Todd A. Weiler, Acting Principal Deputy Assistant Secretary, replied. Albeit in less detail, Mr. Weiler reiterated the sentiments of Mr. Schweiter. He also disagreed that the July 8, 1997 USARPERCOM memorandum that plaintiff received, acknowledging receipt of his Application for Retired Pay, implied that the application had been approved and certified. As Mr. Weiler plainly stated to plaintiff, "There is no evidence you were ever issued official notification of eligibility for retired pay in accordance with Title 10, U.S.Code, Chapter 1223 that would entitle you to retired pay at age 60."

On August 17, 1998, plaintiff submitted an Application for Correction of Military Record to the Army Board for Correction of Military Records (the "ABCMR"). A quorum of the ABCMR members examined plaintiff's application and military personnel records. Based on what it could derive from fragmentary documentation and plaintiff's statements, the ABCMR summarized the plaintiff's military record:

[Plaintiff] entered on active duty in 1960 in an enlisted status. He was promoted to staff sergeant, pay grade E–6, and was appointed as a first lieutenant, Adjutant General Corps, on 21 January 1966.

He was promoted to captain on 1 February 1967 and was released from active duty on 7 April 1967, apparently due to financial hardship caused by monetary mismanagement.

He reentered active duty on 8 September 1967 and was recalled back to the United States from Vietnam due to his mother declaring him a sole surviving son. He was released from active duty on 17 January 1968, possibly due to his status as a sole surviving son.

He was discharged from the [United States Army Reserves "USAR"] due to his earning insufficient retirement points on 1 July 1969.

He was re-appointed as a captain, USAR, on 13 July 1971 and was discharged on 11 January 1973 due to his failure to participate in unit training assemblies (drills).

He was re-appointed as a captain on 10 February 1984, was promoted to major in 1987, and remained assigned to the USAR Control Group (Reinforcement) until his

transfer to the Retired Reserve on 28 February 1995 due to his failure to be promoted to lieutenant colonel.

Memorandum of Consideration, Jimmie [D.] Brooks, AC98–10822 (ABCMR Nov. 10, 1998), at 3–4. Based on its factual findings, the ABCMR affirmed the earlier finding that plaintiff did not meet the statutory requirements for retired pay because he lacked twelve years of creditable service, as well as eight years of reserve service. The ABCMR further found that plaintiff understood the statutory requirements, as evidenced by a letter in which plaintiff requested that the ABCMR make an exception for him. That the ABCMR refused to do, noting that

> contrary to the applicant's contention, there are no "exceptions" to laws, unless prescribed in the law or unless a special act of Congress is passed. The Department of the Army does not have the authority to correct a record that would violate the law.
>
> Even if exceptions could be made, the applicant's military record would not be such as to warrant meritorious consideration. After his commission as an officer, he was discharged due to his financial mismanagement. When he returned to active duty he was removed from a combat zone and discharged at the height of hostilities because of his status as sole surviving son. It is noted that no mention of his being a sole surviving son ever surfaced during his previous 7 years of active duty. When he was assigned to a USAR unit, he was discharged due to his failure to attend drills.

*Id.* at 4.

Having been advised by the ABCMR that only a special act of Congress could establish his eligibility to receive retired pay, plaintiff wrote Senator Barbara Boxer in March 2000. Plaintiff requested that Senator Boxer enact a congressional personal relief bill on his behalf. Senator Boxer's office forwarded plaintiff's request to the ABCMR, where it was accepted as a request for reconsideration of his Application for Correction of Military Record. However, as favorable action on any request for reconsideration requires submission of new materials not previously considered, the ABCMR denied reconsideration by letter dated March 16, 2000.

Plaintiff now sues in the United States Court of Federal Claims, seeking (1) full military retired pay, including back retired pay calculated from June 1998; (2) $20,000,000.00 for slander, libel and defamation of character; and (3) a fully paid life insurance policy, with plaintiff's spouse as beneficiary, in the amount of $300,000.00. Defendant moved to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted

## DISCUSSION

I. *Plaintiff's claim for military reserve retired pay and back pay*

1. *Law governing military reserve retired pay*

Eligibility for military reserve retired pay is governed by 10 U.S.C. §§ 12731–12738 (2000). Pursuant to statute a person is entitled to receive retired pay if (1) he is at least sixty years of age; (2) he has performed a minimum of twenty years of service as determined in accordance with 10 U.S.C. § 12732; (3) he has performed a minimum of eight years of qualifying service in a reserve component; and (4) he is not entitled, under any other provision of law, to retired pay from a division of the armed forces of the United States. 10 U.S.C. § 12731(a).

For each year of service performed after July 1, 1949, a person must earn at least fifty retirement points in that year in order for the time served to act as a qualifying year for purposes of determining reserve retired pay eligibility. 10 U.S.C. § 12732(a)(2). Inactive status service is not counted in this computation. 10 U.S.C. § 12734(a).

The Secretary of the military department in which the individual last served will notify him of his eligibility for reserved retired pay, via a so-called "Twenty–Year Letter." 10 U.S.C. § 12731. At that time the individual must submit an application. Once a person has been granted retired pay, or is notified pursuant to 10 U.S.C. § 12731(d) that he is entitled to receive such pay, the pay may not

be denied or revoked on the basis of any error except where the error was the result of fraud or misrepresentation by the retired service member. 10 U.S.C. § 12738(a).

### 2. *Statute of limitations*

The Tucker Act defines the jurisdictional reach of the Court of Federal Claims. *See* 28 U.S.C. § 1491(a)(1) (2000). It "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and . . . waives the Government's sovereign immunity for those actions." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005). However, this jurisdictional grant is limited by 28 U.S.C. § 2501 (2000), which provides, in pertinent part: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *See Martinez v. United States*, 333 F.3d 1295, 1302 (2003); *Bath Iron Works Corp. v. United States*, 20 F.3d 1567, 1572 (1994); *see also Mai v. United States*, 22 Cl.Ct. 664, 668 (1991) (holding that the six-year statute of limitations is "strictly adhered to in military pay cases").

 A cause of action is deemed to have accrued "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez*, 333 F.3d at 1303 (quoting *Nager Elec. Co. v. United States*, 177 Ct.Cl. 234, 368 F.2d 847, 851 (1966)). As regards military retired pay, a cause of action accrues on the date upon which plaintiff claims he became eligible for retired pay. *See Garcia v. United States*, 223 Ct.Cl. 110, 617 F.2d 218, 221 (1980). Thus, plaintiff's claim accrued on June 4, 1997, his sixtieth birthday and the date on which he requested that his military retired pay commence.[2] The period of time that

since has elapsed well exceeds the bounds prescribed by 28 U.S.C. § 2501.

Although plaintiff argues that the statute of limitations should be tolled, tolling is not appropriate in this case. "The [six]-year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed.Cir. 1988).

A cause of action against the Government is deemed to accrue when all the events which fix the Government's alleged liability have occurred and the plaintiff was, or should have been, aware of their existence. Because plaintiff has been aware that he was not receiving the retired pay he maintains is due to him since his sixtieth birthday, he is deemed to have been aware of all the facts giving rise to his claim. "A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community, and to excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute." *United States v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

 Furthermore, equitable tolling is inapplicable. The United States Supreme Court has "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (footnote omitted). Although plaintiff has diligently pursued retired pay before the Army Board for Correction of Military Records, binding precedent dictates that such action is "permissive" and does not toll the statute of

---

2. Alternatively, the time of accrual could be calculated from the date upon which plaintiff was notified that he was eligible to receive retired pay benefits. Assuming, *arguendo*, that the word of an unidentified clerk at the USARPERCOM was

sufficient to bind the United States Government back in 1995, contrary to the binding precedent cited in part 3 of this section, plaintiff's claim would still be time barred.

limitations. *Cf. Martinez*, 333 F.3d at 1303 ("[T]he failure to seek relief from a correction board not only does not prevent the plaintiff from suing immediately, but also does not prevent the cause of action from accruing."). In addition, no evidence is present to suggest that the Government committed any sort of fraud or trickery.

As the statute of limitations is a jurisdictional prerequisite to the exercise of power by the Court of Federal Claims, *Bath Iron Works Corp.*, 20 F.3d at 1572, plaintiff's claim must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (finding that jurisdiction must be established before court may proceed to merits of case).

3. *Failure to state a claim for retirement pay based on a contract*

■ Defendant argues, in the alternative, that plaintiff's claim for military retired pay must be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Although plaintiff's claim fails for lack of jurisdiction, the court will address defendant's argument for completeness.

The task of a federal court when reviewing the sufficiency of the complaint for failure to state a claim "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* Courts adhere to " 'the accepted rule that a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); accord *New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.1997). Therefore, when a complaint is properly within its jurisdiction, a court is to accept as true the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and entertain all reasonable inferences in favor of the non-movant, *Henke v. United States*, 60 F.3d 795,

797 (Fed.Cir.1995). If relief can be granted " 'under any set of facts that could be proved consistent with the allegations[,]' " *NOW, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)), then the motion must be denied.

The court is mindful that complaints filed by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curium). However, while "the fact that [a plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, . . . it does not excuse its failures, if such there be." *Henke*, 60 F.3d at 799; see also *Bernard v. United States*, 59 Fed.Cl. 497, 499 (2004) ("This latitude [afforded to *pro se* plaintiffs], however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements."), aff'd, 98 Fed.Appx. 860 (Fed.Cir.2004) (unpubl.table). As this court stated in *Demes v. United States*, "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from a finder of fact to advocate." 52 Fed.Cl. 365, 369 (2002).

Plaintiff alleges that the statements of the unidentified USARPERCOM clerk created "a contract between [him] and the U.S. Army whereby the Army has committed to pay . . . retired pay and subsequently revoked that commitment." Pl.'s Br. filed Jan. 17, 2006, at 4. However, the United States Supreme Court has determined that ordinary contract principles do not apply to military pay matters. *United States v. Larionoff*, 431 U.S. 864, 869, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) ("[A] soldier's entitlement to pay is dependent upon statutory right, and . . . accordingly the rights of the affected service members must be determined by reference to the statutes and regulations governing the VRB, rather than to ordinary contract principles" (internal citation and quotation omitted)); *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961) ("Preliminarily, it is to be observed that common-law rules governing private contracts have no place in the area of military pay. A soldier's

entitlement to pay is dependent upon statutory right."); *accord Zucker v. United States,* 758 F.2d 637, 640 (Fed.Cir.1985) (Federal workers' "entitlement to retirement benefits must be determined by reference to the statute and regulations governing these benefits, rather than to ordinary contract principles."). Therefore, 10 U.S.C. §§ 12731–12738 and its demands for fifty points per qualifying year and written notification control.

Even if the complaint were considered to espouse a contract claim, the facts are such that plaintiff cannot support this claim. In addition to a "mutual intent to contract[,] including an offer, an acceptance, and consideration," the formation of a valid contract with the United States requires that the government representative who entered or ratified the agreement have the actual authority to bind the United States. *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997); see also *Heckler v. Cmty. Health Serv. of Crawford County,* 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). The Government only can be bound by its authorized agents. *Flexfab, LLC v. United States,* 424 F.3d 1254, 1263 (Fed.Cir. 2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept."). "Anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); see also *Trauma Serv. Group,* 104 F.3d at 1325 (A party to an agreement with the Government accepts "the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority."). In the present instance, no factual showing has been made to indicate that the unidentified USAR-PERCOM clerk had the power to bind the United States to a contract by and between plaintiff and the United States Army.

## II. *Plaintiff's claim for libel, slander and defamation of character*

In addition to his claim for retirement pay and back pay, plaintiff seeks $20,000,000.00 in monetary damages for slander, libel and defamation of character. In support of this claim, plaintiff points to the Board for Correction of Military Records, which accused him of financial mismanagement and labeled him a coward for leaving a combat zone during the height of hostilities. Plaintiff states that these accusations are patently untrue:

> The fact is that at that time the monthly pay for a Captain was very low and insufficient to support a wife and two children plus helping to support my Mother.... The problem was not mismanagement, it was insufficient pay and I felt that my family should come first in any endeavor I undertook. I had to secure a civilian job at a much higher rate of pay in order to provide for my family.
>
> ....
>
> ... This [sole surviving son] issue was raised by my Mother, who contacted a Congressman .... She did this because my Father was killed in action in the European Theatre of Operation with the U.S. Army during WWII. The Board's statement implies cowardice, which slanders and defames my person and character. How dare the Board make such an accusation of cowardice when my official military personnel file reflects only the highest level of character and performance.

Compl. 3–4.

While this court can find no evidence that plaintiff did anything other than honorably serve his country for twenty-two years, his claim does not lie within the jurisdictional grant of the Court of Federal Claims. The Court of Federal Claims lacks jurisdiction over civil wrongs, or torts, committed by agents of the United States. *See LeBlanc v. United States,* 50 F.3d 1025, 1030 (Fed.Cir.1995) (Where the issues are tort claims, "the Court of Federal Claims has no jurisdiction."); *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir.1993) ("It is well settled that the United States Court of Fed-

eral Claims lacks-and its predecessor the United States Claims Court lacked-jurisdiction to entertain tort claims."); *New Am. Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1079 (Fed.Cir.1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act. . . .").

The Government conduct alleged here is pleaded as a tortious act. The Court of Federal Claims cannot grant judgment for a wrong that is tantamount to a tort. *Keene Corp. v. United States*, 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *see also Joshua v. United States*, 17 F.3d 378, 379–80 (Fed.Cir.1994); *Campbell v. United States*, 229 Ct.Cl. 706, 707 (1981) (per curiam).

III. *Plaintiff's claim for a life insurance policy*

 Finally, plaintiff seeks a "fully paid up life insurance policy, with [his] wife as beneficiary, in the amount of $300,000." Compl. at 5. Plaintiff predicates this claim merely on the assertion that "[l]ife [i]nsurance is an integral part of the military retirement package and [he] has been denied the opportunity to avail [him]self of this benefit. . . ." *Id.*

The Tucker Act grants jurisdiction to claims for money damages, *United States v. King*, 395 U.S. 1, 4–5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), based upon statutes or regulations that require the payment of money, contracts express or implied in fact, or claims for property that has been taken in violation of the Fifth Amendment of the Constitution, *United States v. Mitchell*, 463 U.S. 206, 215–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). While "leniency with respect to mere formalities should be extended to a *pro se* party," *Kelley v. Sec'y*, 812 F.2d 1378, 1380 (Fed.Cir.1987), the court cannot excuse plaintiff from "somewhere display[ing]" a valid cause of action, *Ruderer v. United States*,

188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Plaintiff cites no statute that would mandate the life-insurance benefit that he seeks, and, despite a thorough search of the record, the court can discern no facts that would give rise to a valid cause of action. Therefore, the court must dismiss based on lack of jurisdiction plaintiff's claim for a $300,000.00 insurance policy.[3]

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion pursuant to RCFC 12(b)(1) to dismiss plaintiff's complaint is granted. The Clerk of the Court shall dismiss all claims in the complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

---

3. In its reply brief, defendant urges that plaintiff abandoned his claim for a $300,000.00 life-insurance policy when he failed to address defendant's argument in its moving brief. While plaintiff does not again broach the issue of life insurance in his January 17, 2006 brief, he does vehemently characterize defendant's argument that he has failed to state a claim upon which

relief may be granted as "a gross misstatement of the facts." Pl.'s Br. filed Jan. 17, 2006, at 5. As *pro se* pleadings are governed by less stringent standards than counseled pleadings, *Haines*, 404 U.S. at 520, 92 S.Ct. 594, the court has considered plaintiff's argument.

Although defendant moved to dismiss this claim on the merits, its defect is jurisdictional.