Herman Edward WILLIAMS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 08–47.

United States Court of Federal Claims.

March 2, 2010.

Herman Edward Williams, Newport News, VA, Plaintiff, pro se.

Christopher L. Krafcheck, United States Department of Justice, Civil Division, Washington, D.C.

## OPINION

BRUGGINK, Judge.

Pending before the court is plaintiff's motion for judgment on the administrative record.[1] Also pending is defendant's motion to dismiss and, in the alternative, cross-motion for judgment on the administrative record. The motions are fully briefed and are ready for disposition. We deem oral argument unnecessary. For the reasons set forth below, we grant defendant's motion.

### BACKGROUND [2]

Mr. Williams joined the United States Navy Reserve in 1962 and served for approx-

---

1. Mr. Williams filed other motions, still pending, variously titled as motions "for summary judgment," "for admission of authenticated admissible evidence," and "for writ of execution." Because their substance is addressed by the cross-motions for summary judgment, these other motions are denied as moot.

2. These facts are taken from the parties' motions and the 719–page administrative record and, unless otherwise noted, are undisputed.

imately ten months before entering active duty in the United States Army where he served in the 82nd Airborne Division. About one year later, while receiving medical care at an Army hospital at Fort Bragg, North Carolina, Mr. Williams revealed that prior to entering military service he had experienced and been treated for periods of unconsciousness. Mr. Williams' condition was diagnosed as grand mal epilepsy.

In February of 1964, Mr. Williams requested a discharge for a medical condition existing prior to service. In this request, he elected not to have his case considered by a Physical Evaluation Board and acknowledged that this separation did not qualify him for disability retirement. One month later, after review of his request by a medical board, Mr. Williams was honorably discharged from military service.

In August of 1975, Mr. Williams enlisted in the United States Army Reserve ("Army Reserve"). In the enlistment process, he denied any history of seizure disorder. For the next seven years he served as a medical specialist, attaining the rank of sergeant. After a brief hiatus, Mr. Williams resumed service in the Army Reserve from 1984–87,[3] followed by service in the New Jersey Army National Guard from 1988–92.

In 1993, Mr. Williams submitted an application to the Army Board for Correction of Military Records ("ABCMR" or "the Board") requesting that his military records be corrected to show that his seizure disorder was aggravated by his military service. The Board denied his request in 1995, noting that his application was beyond the three-year statute of limitations imposed by 10 U.S.C. § 1552(b) (2006) to challenge the allegedly erroneous or unjust record.

In 1996, Mr. Williams enlisted in the Virginia Army National Guard, serving primarily as an artillery crew member. As a result of his continued health difficulties, he was excused from unit training duties from 1998–99. In 1999, he filed a request for reconsideration of the ABCMR's decision in his case. The Board rejected his request, finding there was no new evidence to warrant reconsideration of its previous decision.[4] In November of 1999, the Virginia Army National Guard informed Mr. Williams that the State Medical Duty Review Board had evaluated his health and recommended he be discharged due to his medical condition. Early in 2000, Mr. Williams was honorably discharged from service.

In 2004 Mr. Williams again petitioned the ABCMR for reconsideration of its 1995 decision. The Board denied his request in 2005, noting that his previous request for reconsideration had exhausted his administrative remedies and, thus, he was not eligible for further reconsideration. The Board did note, however, that Mr. Williams could seek judicial relief in an appropriate court.

In 2007, Mr. Williams once again requested reconsideration by the ABCMR, this time including a new request that his records be corrected to reflect 17 years of service. The Board noted that his claim was not timely, but elected to review his case to determine if it was in the interest of justice to excuse the delay. In 2008, the Board largely rejected his request,[5] concluding there was no evidence to show that he completed 17 years of qualifying service. Early in 2009, Mr. Williams filed a request for reconsideration, again seeking correction of his records to reflect additional years of service. After considering his request and evidence, the Board again denied his application.

Over the years, in addition to his military service, Mr. Williams has worked at the Philadelphia naval shipyard and on the police

---

**3.** While it is undisputed that Mr. Williams was enrolled in the ranks of the Army Reserve during this period, the parties disagree whether he participated in a sufficient amount of training during these years for them to count toward retirement.

**4.** Appended to his 1999 request, Mr. Williams submitted several pages photocopied from the *Lawyers' Medical Cyclopedia* purporting to show that environmental stress may manifest in epilepsy. Admin. R. 663–65 [hereinafter "AR___"]. This "new evidence" had no bearing on the basis of the Board's previous decision, namely the Board's three-year statute of limitations.

**5.** The Board granted partial relief, correcting Mr. Williams' record to reflect an additional 9 months and 29 days of inactive service in 1962–63.

force of Philadelphia, Pennsylvania. He currently serves as a volunteer assistant chaplain, counseling inmates at the Newport News, Virginia, city jail. Mr. Williams lost his left kidney to renal cell cancer in 1993 and currently suffers from diabetes. The Department of Veterans Affairs ("VA") has granted him a 70% disability rating and currently pays him 100% compensation due to unemployability.

## PROCEDURAL HISTORY

On January 22, 2008, Mr. Williams filed a complaint, *pro se*, seeking retirement benefits, including back pay. In Count I, he alleges his epileptic seizures were caused by his infantry training and that he continues to suffer emotional distress as a result of his 1964 discharge. In Count II, he seeks relief for emotional distress caused by the denial of his retirement benefits, alleging this is a result of negligent record keeping by various military clerks. In Counts III and IV, Mr. Williams argues for his eligibility for an "Army retirement letter" pursuant to 10 U.S.C. § 12731b(a) (2006).

The case was subsequently stayed pending the outcome of Mr. Williams' 2007 petition to the ABCMR to correct his records to reflect additional years of service, which, if granted, would entitle him to a military retirement. During the stay, Mr. Williams filed a motion for summary judgment, consideration of which was delayed pending the resolution of his petition to the Board. When the ABCMR denied his petition in 2009, progress in this case resumed. Mr. Williams subsequently filed a second motion for summary judgment.

In subsequent briefing, Mr. Williams withdrew one of his claims, namely that he is due an Army disability retirement solely as a result of his 1964 medical discharge.[6] Thus, only two of plaintiff's claims remain before this court: (1) for emotional distress resulting from negligence by Army record-keeping personnel and (2) for review of the ABCMR's

decision to deny him disability retirement pursuant to 10 U.S.C. § 12731b(a).

## DISCUSSION

### I. Jurisdiction

Before the court considers the merits of a complaint, it must determine the threshold matter of subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). If the court lacks jurisdiction, it must dismiss the complaint. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Although complaints filed by *pro se* litigants are typically held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), this relaxed standard does not relieve a plaintiff from establishing jurisdiction. *See Bernard v. United States*, 59 Fed.Cl. 497, 499 (2004).

This court's primary source of jurisdiction is the Tucker Act, which grants jurisdiction over certain claims seeking money damages from the United States.[7] *See* 28 U.S.C. § 1491(a)(1) (2006). This statute itself, however, "does not create any substantive right enforceable against the United States for money damages." *Litzenberger v. United States*, 89 F.3d 818, 820 (Fed.Cir. 1996). Rather, the Tucker Act merely confers jurisdiction upon the court where a substantive right exists. *See United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Thus, a plaintiff alleging jurisdiction under the Tucker Act must also ground his claim on some substantive right to monetary recovery. We consider each of Mr. William's claims in turn.

### A. Negligent Infliction of Emotional Distress

In Count II of his complaint, Mr. Williams alleges that the negligence of vari-

---

**6.** Mr. Williams also renewed his dispositive motions, properly denominating them as motions for judgment on the administrative record.

**7.** This court may also order the correction of military records "as an incident of and collateral to" an award of monetary damages. 28 U.S.C. § 1491(a)(2); *see Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir.1988).

ous Army record-keeping clerks resulted in errors in his military records, thus delaying his receipt of retirement benefits and causing severe emotional stress and depression. This claim sounds in tort. *See McCullough v. United States*, 76 Fed.Cl. 1, 4 (2006) (citing *Matthews v. United States*, 72 Fed.Cl. 274, 279 (2006)) (noting that negligent infliction of emotional distress is a tort claim). This court has no jurisdiction over tort claims, *see* 28 U.S.C. § 1491(a)(1) (2006), and accordingly we cannot entertain this claim. *Rick's Mushroom Serv. v. United States*, 521 F.3d 1338, 1343 (Fed.Cir.2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort."). Therefore, we grant the government's motion to dismiss this aspect of Mr. Williams' claim.

*B.  Disability Retirement*

■ In Counts III and IV of his complaint, Mr. Williams alleges he has accumulated sufficient years of service to merit a "15–year letter" and receive disability retirement pursuant to 10 U.S.C. § 12731b(a). That statute provides:

> In the case of a member of the Selected Reserve of a reserve component who no longer meets the qualifications for membership in the Selected Reserve solely because the member is unfit because of physical disability, the Secretary concerned may, for purposes of section 12731 of this title, determine to treat the member as having met the service requirements of subsection (a)(2) of that section and provide the member with the notification required by subsection (d) of that section if the member has completed at least 15, and less than 20, years of service computed under section 12732 of this title.

10 U.S.C. § 12731b(a). In essence, members of the reserves who are no longer qualified to serve due to physical disability and who have accumulated between 15 and 20 qualifying years of service[8] are entitled to military reserve retired pay, a benefit normally reserved for members who have accrued 20 or more years of service. The statute does not require that the injury be service related and the statute's title makes clear that it deals with "physical disabilities not incurred in the line of duty." *Id.*

■ As previously noted, Tucker Act jurisdiction must be based on some substantive right of recovery. When, as here, that right of recovery is statutory, this court has an obligation to determine at the outset whether that statute is money-mandating. *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed.Cir. 2005). No court has previously squarely addressed whether the statute at issue here— 10 U.S.C. § 12731b—is money-mandating. *But see id.* at 1174–75 (stating that 10 U.S.C. § 1201, a statute authorizing disability retirement for active duty service members, is money-mandating); *Kosmo v. United States*, 72 Fed.Cl. 46, 47 n. 1 (2006) (recognizing a neighboring statute, 10 U.S.C. § 12731, is money-mandating). As discussed further below, it seems clear that this statute is money-mandating.

■ To be considered money-mandating, "[i]t is enough ... that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003). Stated differently, the "plaintiff must invoke a rights-creating source of substantive law that 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'"[9] *United States v. Navajo Nation*, 537 U.S. 488, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003) (quoting *United States*

---

8. A qualifying year, as defined by Army regulations, is one in which a reservist was credited a minimum of 50 retirement points. Retirement points are themselves, in turn, defined by Army regulations and are awarded based on the quantity and types of training and activities engaged in by the reservist. *See generally* 10 U.S.C. § 12732; *Brooks v. United States*, 70 Fed.Cl. 479, 483–84 (2006).

9. Whether this test differs from that articulated in *White Mountain* is unclear. *See White Mountain*, 537 U.S. at 487, 123 S.Ct. 1126 (Thomas, J., dissenting) ("The Court today fashions a new test to determine whether Congress has conferred a substantive right enforceable against the United States in a suit for money damages."). Under either test, however, the result here is the same.

*v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)).

■ Here, the statute can "fairly be interpreted" as mandating monetary compensation and seems "reasonably amenable" to such a reading. Although the statute contains the word "may," this permissive sounding language does not make retirement pay discretionary. In *Sawyer v. United States,* the Federal Circuit considered similar language in a statute authorizing disability retirement pay for active duty service members and concluded "[t]he word 'may' in [10 U.S.C.] section 1201 does not convey discretion whether or not to pay." 930 F.2d 1577, 1580 (Fed.Cir.1991). Likewise, here, when the statute's requirements are satisfied, the member is entitled to monetary compensation in the form of disability retirement pay. *See id.* at 1581. Furthermore, as a practical matter, were Mr. Williams to prevail in his quest for additional qualifying years of service, he would receive his disability retirement pay from the federal treasury. Thus, we hold this statute is money-mandating and provides a substantive right on which to base Tucker Act jurisdiction.

## II. *Statute of Limitations*

All claims brought under the Tucker Act are subject to a six-year statute of limitations. 28 U.S.C. § 2501 (2006). Accordingly, for this court to entertain Mr. Williams' claim, his suit must have been filed within six years after it accrued. The government's argument on this point focuses exclusively on Mr. Williams' now-abandoned claim for retirement based on his 1964 discharge and does not discuss the effect of the statute of limitations on his distinct remaining claim for a 15–year letter. We nonetheless consider the statute of limitations as part of our necessary determination of jurisdiction.

■ As a general matter, a claim accrues "when all the events have occurred that fix the alleged liability of the Government and entitle the claimant to institute an action." *Ingrum v. United States,* 560 F.3d

1311, 1314 (Fed.Cir.2009) (citing *Alliance of Descendants of Tex. Land Grants v. United States,* 37 F.3d 1478, 1481 (Fed.Cir.1994)). In the context of military retirement cases, the Federal Circuit has offered additional guidance. Specifically, claims for disability retirement pay "do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." *Chambers v. United States,* 417 F.3d 1218, 1224 (Fed.Cir.2005) (citing *Real v. United States,* 906 F.2d 1557, 1560 (Fed.Cir.1990)).

■ The statute of limitations, therefore, may begin to run either at the time of discharge—if an appropriate board denied the claim or the service member's request for board review was denied—or at some point thereafter when a Correction Board becomes the first proper board to consider the matter. *Id.* at 1225. In any event, "the Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance." *Id.* Here, there is no evidence that Mr. Williams sought or was denied board review at the time of discharge,[10] thus, under the *Chambers* rule, the statute of limitations did not begin to run at that time.

■ There is, however, an exception to *Chambers* general rule. This exception, discussed in *Chambers* and found in *Real v. United States,* 906 F.2d 1557 (Fed.Cir.1990), provides that if a service member has actual or constructive knowledge of his disability but fails to request a hearing board prior to discharge, the statute of limitations begins to run at the time of discharge. "The appropriate inquiry" when considering this exception "is whether at the time of separation ... [the claimant] knew that he was entitled to disability retirement due to a permanent disability...." *Chambers,* 417 F.3d at 1226. Here, there is no evidence that Mr. Williams had such knowledge at the time of his discharge. Neither his report of separation, AR 1, nor the letter recommending his separation, *id.* at 7, mention disability retirement or permanent disability.[11] Indeed, more than

---

10. The relevant discharge was Mr. Williams' March 7, 2000 discharge from the Virginia Army

National Guard, not his 1964 discharge from the regular Army.

11. Although a physician had opined in 1986 that

two years passed before Mr. Williams began receiving disability compensation from the VA.[12] *See id.* at 593. Nothing in the record suggests that he was aware at the time of discharge of the possibility of receiving disability retirement pay and we conclude that the *Real* exception does not apply here.

Therefore, under the general rule in *Chambers,* Mr. Williams' claim to § 12731b retirement accrued only when it was finally denied by a competent board. Here, various of Mr. Williams' claims were denied by the ABCMR in 1995, 1999, 2005, 2008, and 2009. It was only in the two most recent denials, however, that the Board considered and rejected the issue of the "15-year letter" and whether his years of service were properly calculated. *See* AR 348–57, 455–60. This issue is distinct and separate from Mr. Williams' previous claims, which alleged his epilepsy was caused by military service and he was due a disability retirement in 1964. Thus, the Board's 2008 decision was the first instance in which an appropriate board evaluated this claim and marks the point at which the claim accrued. Because Mr. Williams brought this action within six years of the Board's decision,[13] we conclude that Mr. Williams' claim for disability retirement is timely.

### III. Review of the ABCMR's Decision

■■■ Currently before the court are both parties' motions for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). "The resolution of RCFC 52.1 cross-motions is akin to an expedited trial on the paper record." *A & D Fire Prot. v. United States,* 72 Fed.Cl. 126, 131 (2006). In deciding a motion for judgment on the administrative record, "the court asks whether, given all the disputed and undisputed facts in the administrative record, the plaintiff has

met her burden of proof to show that the decision was not in accordance with law." *Melendez Camilo v. United States,* 89 Fed. Cl. 671, 677 (2009) (citing *Bannum v. United States,* 404 F.3d 1346, 1354–57 (Fed.Cir. 2005)).

■■■ When considering claims that touch upon the "composition, training, equipping, and control of a military force," this court's scope of review is somewhat circumscribed. *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002). Specifically, our review of the ABCMR is limited to "whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998) (citing *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979)). Although often confronted, as here, with sympathetic circumstances, the court cannot substitute its judgment for that of the ABCMR. *See Heisig v. United States,* 719 F.2d 1153, 1156–57 (Fed.Cir.1983).

■■■ Here, Mr. Williams' complaint hinges upon essentially one point, namely the Board's 2009 conclusion that there was insufficient documentation to award Mr. Williams retirement points and qualifying years of service for 1984–86.[14] After examining the Board's Record of Proceedings, we cannot conclude that its decision was arbitrary and capricious. The Board thoroughly considered the evidence and claims presented by Mr. Williams and we will not disturb its findings.

In its report, the Board properly recognized that "[t]he primary issue in this case is simply whether the applicant has submitted sufficient evidence and/or made persuasive enough argument to warrant crediting him with sufficient additional retirement points to qualify him for issuance of a 15 year let-

---

Mr. Williams was "essentially, permanently, partially disabled," AR 355, his continued service over the following decade indicate that neither he nor the Army considered this opinion to be accurate. There is no indication this 1986 medical opinion notified Mr. Williams of the possibility of disability retirement in 2000.

**12.** For further discussion of the import of the VA disability award, see *infra* section III.

**13.** In fact, Mr. Williams filed his complaint on January 22, 2008, before the Board rendered its determination on March 11, 2008.

**14.** The Board also considered and rejected his request for additional retirement points from 1992–93 and 1998. AR 356. Mr. Williams, however, has not challenged those findings.

ter." [15] AR 354. The report accurately set out the relevant statutes and Army regulations, thoroughly and carefully examined Mr. Williams' request and evidence, and clearly explained the Board's findings and conclusion.

Specifically, the Board examined Mr. Williams' leave and earning statements from the years in question and concluded that, although a member of the Army Reserve during this time, he had not completed drills or received pay. We have examined the leave and earning statements ourselves and, like the Board, find them insufficient to support Mr. Williams' request for retirement points. Indeed, each monthly statement from June 1984 through June 1986 indicates that Mr. Williams received no pay and participated in "no drill performance" during the two-year period. *Id.* at 178–96.

The Board noted that the lack of drill attendance and break in service was "consistent with his physician's findings on 4 December 1986 that ... he was considered essentially, permanently, partially disabled." AR 355. The Board further considered Mr. Williams' receipt of the Army Reserve Component Achievement Medal in 1987 and concluded it "cannot be accepted in and of itself as evidence that the applicant earned qualifying years of service." [16] AR 354. Again, we cannot say this conclusion was arbitrary, capricious, or otherwise contrary to law. Despite the lack of evidence supporting his claim, the Board considered whether Mr. Williams' request merited relief despite the paucity of evidence, but ultimately concluded "there is no basis for granting the applicant's request." AR 355–57.

 Mr. Williams also argues that the Board's decision is inconsistent with the VA's award of disability compensation. As an initial matter, we note that this argument, which regards the degree and cause of his disability, is irrelevant to the remaining issue of whether Mr. William's qualifying years of service were properly calculated. In any event, while "a VA rating decision may be relevant to consideration of an appropriate disability rating, it is not binding on the service branch." *Childers v. United States*, 81 Fed.Cl. 693, 716 (2008) (citing *Bennett v. United States*, 200 Ct.Cl. 635, 643–44 (1973)). Thus, the Board did not err by declining to adopt the VA's findings.

## CONCLUSION

After reviewing the evidence before the ABCMR and the record of its proceeding, we cannot say its decision that Mr. Williams had not accumulated fifteen years of service was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Accordingly, we deny plaintiff's motions for summary judgment and for judgment on the administrative record and grant defendant's motion for judgment. Plaintiff's other outstanding motions, *see supra* note 1, are denied as moot. The clerk is directed to dismiss the case. No costs.

---

15. Mr. Williams' military records currently reflect 13 years, 11 months, and 21 days of qualifying years of service, *see* AR 365, approximately one year short of what he needs for a 15-year letter.

16. The Board acknowledged that this medal is awarded in recognition of qualifying years of service, but concluded "[a] mistake was obviously made which resulted in the applicant being erroneously awarded" the medal. AR 354.