**Nancy MELENDEZ CAMILO, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 09–183C.**

United States Court of Federal Claims.

Nov. 25, 2009.

Michael D.J. Eisenberg, Law Office of Michael D.J. Eisenberg, Washington, D.C., for plaintiff.

Jessica R. Toplin, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Tony West, Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Donald E. Kinner, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, D.C. Captain Lauren DiDomenico, Litigation Attorney, United States Air Force, was of counsel.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff, Nancy Melendez Camilo, alleges she was wrongfully retired from the United States Air Force at the rank of major after having been successively passed over for promotion to the rank of lieutenant colonel and that a decision of the Air Force Board for Correction of Military Records ("Correction Board") to deny correction of her military

records and promotion to the rank of lieutenant colonel was arbitrary and capricious. Compl. ¶¶ 1, 20. Major Melendez Camilo has asked the court to set aside her retirement and promote her to the rank of lieutenant colonel, or, in the alternative, retroactively retire her at that rank. Compl. ¶ 26. She seeks back pay and benefits dependent upon the rescission of her forced retirement as a major. Compl. ¶ 27. The government has moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") on the grounds that this court lacks subject matter jurisdiction over Major Melendez Camilo's claims and that she has failed to state a claim upon which relief can be granted, respectively. Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Judgment upon the Administrative Record at 1 (Def.'s Mot.). In addition, the government has filed the administrative record pursuant to RCFC 52. 1, and it has moved for judgment on that record. Def.'s Mot. at 1. The several motions have been fully briefed and a hearing was held on November 10, 2009. The case is ready for disposition.

## FACTS[1]

Major Melendez Camilo's career in the Air Force has been affected by two sets of proceedings before correction boards, the first of which related to her service up to January 1989, and the second of which concerned her service from August 1995 through March 2003.

### A. The First Set of Correction Board Proceedings

Major Melendez Camilo commenced active duty military service in the Air Force on March 18, 1979. AR 50a at 10 (Certificate of Release or Discharge From Active Duty).[2] On October 5, 1981, she was promoted to the rank of captain. AR 50a at 35 (Special Order AB–050 (Aug. 31, 1995)). In 1987 and again in 1988, she was considered but not selected for promotion to the rank of major by the Central Major Promotion Boards for those years. AR 64 (Application for Correction of Military Records (Mar. 22, 1991)). As a result of her failure to be selected for promotion in 1987 and 1988, plaintiff was involuntarily separated from active duty on January 31, 1989, and assigned to the Inactive Status List Reserve Section, effective on February 1 of that year. AR 50a at 36 (Request and Authorization for Change of Administrative Orders (Aug. 15, 1995)).

At that time, then-Captain Melendez Camilo contended that her failure to be selected for promotion to the rank of major was due to a "prejudicial" Officer Effectiveness Report for the period from June 16, 1984 through January 31, 1985. See Compl. ¶ 10. On March 12, 1988, more than ten months prior to her involuntary separation from active duty on January 31, 1989, plaintiff had applied to a Correction Board requesting that the report be removed from her records. AR 52–55 (Record of Correction Board Proceedings (June 9, 1989)). In response, although the Correction Board recommended that the contested report be voided and removed from plaintiff's records and that she be considered for promotion to major by a special selection board, AR 54,[3] the Correction Board's recommendation was not accepted by the Deputy for Air Force Review Boards until June 9, 1989, about five months

---

**1.** The recitation of facts is drawn from the administrative record. *See Santiago v. United States,* 75 Fed.Cl. 649, 653 (2007) ("In accord with RCFC 52. 1, the court 'is required to make factual findings ... from the [administrative] record as if it were conducting a trial on the record.'" (quoting *Acevedo v. United States,* 216 Fed.Appx. 977, 979 (Fed.Cir.2007))).

**2.** References to the administrative record will be to "AR ....." References to Major Melendez Camilo's Master Military Personnel Record, part of the administrative record filed separately, will be to "AR 50a at ....."

**3.** If the Secretary of the Air Force determines that a selection board's decision not to select an officer for promotion was contrary to law, based upon a material error, or based upon incomplete information, the Secretary may convene a special selection board to reconsider the officer's records. *See* 10 U.S.C. § 628(b). However, an officer may only be promoted through a special selection board if they score higher than all the other officers considered non-selected and tie the score of at least one officer selected from the original board. *See* Air Force Instruction 36–2504, *Officer Promotion, Continuation and Selective Early Removal in the Reserve of the Air Force,* ¶ 9.4.3 (Jan. 9, 2003).

after plaintiff's involuntary separation from active duty. AR 51 (Mem. for the Chief of Staff (June 9, 1989)). In accord with the Correction Board's recommendation, a Special Selection Board was convened on November 27, 1989 to reconsider plaintiff's records. AR 59 (Record of Correction Board Proceedings (July 1, 1992)). However, that Board did not select plaintiff for promotion to major. *Id.*

On January 10, 1991, then-Captain Melendez Camilo again applied to a Correction Board for relief, alleging that in evaluating plaintiff for promotion, the Special Selection Board had failed to consider the effect the previously contested and subsequently voided Officer Effectiveness Report had on her records from January 1985 through January 1989. AR 69 (Addendum to Record of Correction Board Proceedings (May 15, 1995)) ("Addendum to May 1995 Proceedings"); AR 59–63 (Record of Correction Board Proceedings (July 1, 1992)). The Correction Board concluded that there was no "evidence of discrimination, bias or denial of equal opportunity and treatment rights reflected in [plaintiff's] Selection Folder" and denied her application. AR 62. Plaintiff subsequently submitted an application for reconsideration, which the Correction Board denied on October 19, 1992. AR 70 (Addendum to May 1995 Proceedings).

On December 2, 1994, then-Captain Melendez Camilo submitted a second application for reconsideration to the Correction Board. AR 70 (Addendum to May 1995 Proceedings). Plaintiff sought: (i) direct promotion to the rank of major with a promotion date equivalent to that which she would have had if the Central Major Promotion Board had selected plaintiff for promotion in 1987; (ii) reinstatement to active duty; and (iii) a direct promotion to the rank of lieutenant colonel with a promotion date commensurate with her promotion date for the rank of major. *Id.* With this application, then-Captain Melendez Camilo submitted a statement from her former Wing Commander to the effect that the previously contested and subsequently voided Officer Effectiveness Report she had received for the period of June 16, 1984 to January 31, 1985, had affected the endorse-ment level on her report closing on December 17, 1987, and thus reduced her prospects for promotion to major in 1987 and 1988. AR 71 (Addendum to May 1995 Proceedings). The Correction Board determined plaintiff had presented sufficient evidence of error and recommended partial relief, specifically that her records be corrected to reflect the following:

a. She was tendered a Regular Air Force appointment and upon Senate confirmation, she accepted the appointment, effective 18 December 1985.

b. She was considered and selected for promotion to the grade of major by the Calendar Year 1987 Central Major Selection Board and upon Senate confirmation, she be given an appropriate effective date and date of rank.

c. The Officer Effectiveness Report, AF Form 707, rendered for the period 18 December 1986 through 17 December 1987, be declared void and removed from her records.

d. She was not released from extended active duty on 31 January 1989, but continued on extended active duty and was ordered Permanent Change of Station (PCS) to her home of record.

It is further recommended that if she is considered and nonselected for promotion to the grade of lieutenant colonel by a regularly scheduled promotion board prior to receiving two current Officer Performance Reports in the grade of major, her nonselection(s) be declared void.

AR 73 (Addendum to May 1995 Proceedings). On May 15, 1995, the Deputy for Air Force Review Boards accepted the Correction Board's recommendations. AR 34 (Mem. for the Chief of Staff (May 15, 1995)). In accord with the Correction Board's recommendations, then-Captain Melendez Camilo was reinstated to active duty on August 15, 1995, and promoted to major on September 1, 1988. AR 50a at 52 (Special Order JB–000937 (June 26, 1996)).

Upon returning to active duty, Major Melendez Camilo was assigned to Langley Air Force Base in Virginia where she worked as Chief of Communications and Information Manpower Organization. AR 50a at 75

(Field Grade Officer Performance Report, June 1, 1996 through May 31, 1997). Major Melendez Camilo avers that she did not have the training, education, or experience to succeed at this assignment and "was also too senior in rank to attend the necessary training course to become competitive [for promotion] with [her] fellow officers in [this] [technology-intensive communications] field." AR 12 (Letter from Major Melendez Camilo to Mack Burton, Director, Correction Board (Feb. 22, 2002)). While at Langley, on March 24, 1997, she submitted a reaccomplished Officer Effectiveness Report closing December 17, 1987 to the Correction Board and requested that the report be included in her records. AR 75–77 (Second Addendum to Record of Correction Board Proceedings (July 29, 1997)). This reaccomplished report was provided to replace the Officer Effectiveness Report that was voided as recommended by the Correction Board's decision of May 15, 1995. AR 76. The Correction Board responded favorably to Major Melendez Camilo's request and recommended that the reaccomplished report be inserted in her records in its proper sequence. AR 76–77. This recommendation was accepted by the Director of Air Force Review Boards Agency on July 29, 1997. AR 74 (Mem. for the Chief of Staff (July 29, 1997)).

Major Melendez Camilo's next assignment after her promotion to major was at AFROTC Detachment 755 in San Juan, Puerto Rico as Assistant Professor of Aerospace Studies. AR 50a at 69 (Field Grade Officer Performance Report, June 1, 1997 through May 31, 1998); AR 50a at 71 (Field Grade Officer Performance Report, June 1, 1998 through May 31, 1999). During this assignment, Major Melendez Camilo discovered and reported violations of AFROTC standards committed by leadership of the Detachment, which resulted in those implicated in wrongdoing being relieved of their duties. AR 13 (Letter from Major Melendez Camilo to Mack Burton, Director, Correction Board (Feb. 22, 2002)). While still at this assignment, after having received two Officer Performance Reports at the rank of major, for the periods ending May 31, 1997, and May 31, 1998, respectively, *see* AR 5, 41–44, Major Melendez Camilo was considered but not selected for promotion to the rank of lieutenant colonel twice in 1999 by the "A" and "B" promotion boards. AR 5 (Record of Correction Board Proceedings (Oct. 9, 2002)).

Major Melendez Camilo's final active duty assignment in the Air Force was at Maxwell Air Force Base in Alabama where she worked as Director of Information Management. AR 50a at 73 (Field Grade Officer Performance Report, June 1, 1999 through May 31, 2000); AR 50a at 67 (Field Grade Officer Performance Report, June 1, 2000 through May 31, 2001); AR 50a at 65 (Field Grade Officer Performance Report, June 1, 2001 through May 31, 2002). During her time at Maxwell, Major Melendez Camilo was considered but not selected for promotion to lieutenant colonel once in 2000 and again in 2001 by the Lieutenant Colonel Central Selection Board. AR 5 (Record of Correction Board Proceedings (Oct. 9, 2002)); AR 78 (Mem. for Correction Board (May 17, 2002)).

### B. The Second Set of Correction Board Proceedings

On February 22, 2002, Major Melendez Camilo asked the Correction Board to recommend her for a direct promotion to lieutenant colonel on the grounds that she was denied the opportunity to develop a record of performance which would have supported her promotion to lieutenant colonel. AR 9 (Application for Correction of Military Record (Feb. 22, 2002)). After consideration, the Correction Board concluded that Major Melendez Camilo had not presented sufficient evidence of material error or injustice. AR 1–8 (Denial of Application for Correction of Military Record, Record of Correction Board Proceedings (Oct. 9, 2002)). The Board explained that its prior recommendations, specifically those implemented based upon its decision of May 15, 1995, had provided Major Melendez Camilo with "an opportunity to compete for promotion on a fair and equitable basis." AR 7. The Board observed that "[p]romotion to the grade of lieutenant colonel is very competitive," and "officers must compete for promotion under the whole person concept whereby many factors are carefully assessed by selection boards." *Id.* In effect, the Correction Board denied relief

because Major Melendez Camilo failed to provide persuasive evidence that she would have been selected for promotion to lieutenant colonel but for the interruption of her career. *Id.*

On March 31, 2003, Major Melendez Camilo was involuntarily retired from the Air Force for failure to be selected for promotion to lieutenant colonel. AR 50a at 9 (Special Order AC003156 (Dec. 6, 2002)). At the time of her retirement, she had served 25 years, 7 months, and 9 days in the United States Air Force. *Id.*

Major Melendez Camilo filed a complaint with this court on March 24, 2009 in which she avers her retirement from the United States Air Force and the Correction Board's decision to deny her request for correction of her records and immediate promotion to the grade of lieutenant colonel were unlawful. Compl. ¶ 1.

## STANDARDS FOR DECISION AND FOR REVIEW

### A. *Motion to Dismiss*

 "Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action." *OTI Am., Inc. v. United States,* 68 Fed.Cl. 108, 113 (2005) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). As plaintiff, Major Melendez Camilo bears the burden of establishing that this court has jurisdiction to hear her claims. *See McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

 In determining whether subject matter jurisdiction exists over a particular claim, the court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). However, the court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)), nor is it

required to give credence to implausible allegations. *See Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). If, applying these standards, the court finds that it is without subject matter jurisdiction to decide a case on its merits, the court is required to either dismiss the action as a matter of law, *see Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868); *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985), or to transfer it to another federal court that would have jurisdiction. *See Gray v. United States,* 69 Fed.Cl. 95, 98, 102–03 (2005) (applying 28 U.S.C. § 1631).

"To survive a motion to dismiss [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* —— U.S. at ——, 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). However, the allegations contained in the complaint must indicate to the court that there is "more than a sheer possibility that the defendant has acted unlawfully;" "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949–50 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). In performing this analysis, the court should place weight upon allegations of fact only, and begin "by identifying the [legal] allegations in the complaint that are [of a conclusory nature and thereby] not entitled to the assumption of truth." *Id.* at 1951.

### B. *Judgment upon the Administrative Record*

 In reviewing a motion for judgment upon the administrative record pursuant to RCFC 52.1, the court asks whether, given all the disputed and undisputed facts in the administrative record, the plaintiff has met her burden of proof to show that the decision was not in accordance with law. *Bannum, Inc. v. United States,* 404 F.3d 1346, 1354–57

(Fed.Cir.2005).[4] The existence of a question of fact neither precludes the court from granting the motion for judgment upon the administrative record nor requires the court to conduct evidentiary hearings; rather, questions of fact are resolved by reference to the administrative record before the Correction Board, "as if [the court] were conducting a trial on [that] record." *Id.* at 1357.

■ With regard to "decisions as to the composition, training, equipping, and control of a military force," the court has a limited role. *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002) (citation omitted) (internal quotation marks omitted). "[T]he substance of such decisions, like many other judgments committed to the discretion of government officials, is frequently beyond the institutional competence of courts to review." *Id.* (citation omitted). Accordingly, when the court is "called upon to review a decision of a [military] corrections board, . . . the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998) (citing *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979) (stating that in reviewing military cases, the court does not sit as "a super correction board")).

■ Major Melendez Camilo "bears the burden of establishing by 'cogent and clearly convincing evidence'" that the Correction Board's decision was arbitrary, capricious, not supported by substantial evidence, or contrary to law. *Colon v. United States,* 71 Fed.Cl. 473, 484 (2006) (citing *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986)), *aff'd sub nom. Acevedo,* 216 Fed.Appx. 977. In reviewing the Correction Board's decision under the substantial evidence rule, "*all* of the competent evidence must be considered,

whether original or supplemental, and whether or not it supports the challenged conclusion." *Heisig v. United States,* 719 F.2d 1153, 1157 (Fed.Cir.1983).

## ANALYSIS

### A. Subject Matter Jurisdiction

■ The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act waives sovereign immunity, but it does not by itself confer a right to recovery. *United States v. Mitchell,* 463 U.S. 206, 215–16, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). To establish such a right, the plaintiff must identify a substantive claim founded in some other source of law that "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Mitchell,* 463 U.S. at 216–17, 103 S.Ct. 2961 (quoting *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)).

■ In the instant case, plaintiff's complaint cites the Tucker Act as providing the court with jurisdiction to adjudicate her claims. Compl. ¶ 2.[5] The government has contested the court's jurisdiction over those claims, referring to plaintiff's failure to cite in her complaint the fact that her claims for back pay and benefits fall within the ambit of the Military Pay Act, 37 U.S.C. § 204(a). Def.'s Mot. at 8–9; Def.'s Reply at 2. Beyond doubt, however, Major Melendez Camilo has invoked the Military Pay Act as the basis for

---

**4.** The decision in *Bannum* was based on then-extant RCFC 56.1. *See* RCFC 52.1, Rules Committee Note (June 20, 2006). In 2006, RCFC 56.1 was abrogated and replaced by RCFC 52. 1, which was designed to incorporate the *Bannum* decision in substantial part. *See id.*

**5.** Plaintiff also cites 28 U.S.C. § 2501, which prescribes the statute of limitations for claims brought in this court, Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706,

which addresses judicial review, and 28 U.S.C. § 1346(a)(2), often referred to as the "Little Tucker Act." Compl. ¶¶ 3–5. These statutes, like the Tucker Act, are not themselves money mandating and therefore cannot alone form the basis of the court's jurisdiction over plaintiff's claims. *See Banerjee v. United States,* 77 Fed.Cl. 522, 534 (2007) (APA not a money-mandating statute); *Doe v. United States,* 74 Fed.Cl. 794, 797–98 (2006) (Little Tucker Act not a money-mandating statute).

her claims. *See* Pl.'s Resp. at 7–8. Specifically, plaintiff avers that "[t]he Military Pay Act is naturally inferred from [p]laintiff's claim to entitlement for back benefits [p]laintiff would receive for her time as a[m]ajor [ ]before her promotion to [l]ieutenant [c]olonel; her time as a[l]ieutenant [c]olonel in the service; and her military retirement at the higher rank of [l]ieutenant [c]olonel." *Id.* at 7.

The Military Pay Act provides that "a member of the uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204(a). The Federal Circuit has repeatedly held that the Military Pay Act is money mandating. *See, e.g., Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir.2003) ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act."); *James v. Caldera,* 159 F.3d 573, 581 (Fed.Cir.1998) ("As far as military personnel are concerned, [the Military Pay Act] serves as a money-mandating statute."); *see also Sargisson v. United States,* 913 F.2d 918, 920 (Fed.Cir.1990) (holding that a claim for reinstatement and back pay based upon an allegedly unlawful separation from active duty falls within the court's jurisdiction under the Tucker Act).

The Federal Circuit has explained that "to bring a military discharge case in the Court of Federal Claims, a plaintiff ... must allege that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Martinez,* 333 F.3d at 1303; *see also Christian v. United States,* 337 F.3d 1338, 1347 (Fed.Cir.2003) (explaining that "military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation" and are therefore "entitled to back pay and benefits for the intervening period"). Major Melendez Camilo alleges that her retirement was unlawful and seeks to recover "back pay and benefits ... stemming from her improper release date of March 31, 2003." Compl. ¶ 27. In short, in the words of *Martinez,* plaintiff "allege[s] that, because of [her] un-

lawful discharge, [she] is entitled to money in the form of the pay that [she] would have received but for the unlawful discharge." *Martinez,* 333 F.3d at 1303. This court has subject matter jurisdiction as a result of that allegation.

The government has requested that plaintiff's second claim for relief, labeled "APA," be dismissed because "[i]t is well settled that this [c]ourt has no jurisdiction to review a[g]overnment agency's action pursuant to the APA." Def.'s Mot. at 9 (citation omitted). This aspect of the government's motion to dismiss correctly states the law. *See, e.g., Lion Raisins Inc. v. United States,* 416 F.3d 1356, 1370 n. 11 (Fed.Cir.2005) ("Of course, no APA review is available in the Court of Federal Claims."). However, although Major Melendez Camilo's second claim for relief is labeled "APA," she does not seek review of a government agency's actions pursuant to the Administrative Procedure Act. Rather, plaintiff seeks review of the Correction Board's decision not to promote her under the "arbitrary and capricious" standard, and relief including back pay stemming from the date of her allegedly unlawful retirement pursuant to the Military Pay Act. *See* Compl. ¶¶ 23–24. Accordingly, the court treats plaintiff's second claim for relief as alleging that "[t]he ... September 17, 2002 decision [by the Correction Board] was arbitrary and capricious," and the court also considers that this more precisely described claim is subsumed in plaintiff's first claim for relief for "wrongful discharge," over which the court has subject matter jurisdiction pursuant to the Military Pay Act.

**B.** *Failure to State a Claim*

That a court finds that a complaint survives a motion to dismiss for lack of subject matter jurisdiction does not necessarily mean that the court will find that the plaintiff has pleaded facts sufficient to state a claim upon which relief may be granted. To survive a motion to dismiss pursuant to RCFC 12(b)(1)—lack of subject matter jurisdiction—a plaintiff need only claim relief under a money-mandating statute. *See Mitchell,* 463 U.S. at 216–17, 103 S.Ct. 2961; *Martinez,* 333 F.3d at 1303.

However, to survive a motion to dismiss pursuant to RCFC 12(b)(6)—failure to state a claim upon which relief can be granted—a plaintiff must assert a set of facts which, if proven, would give rise to the relief sought. *Twombly*, 550 U.S. at 561–62, 127 S.Ct. 1955.

The government contends that Major Melendez Camilo's request that the court promote her to the rank of lieutenant colonel, *see* Compl. ¶ 26, is nonjusticiable. Def.'s Mot. at 11. In her complaint, besides back pay and benefits, Compl. ¶ 27, Major Melendez Camilo also requests equitable relief, *i.e.*, that the court set aside her retirement and promote her to the rank of lieutenant colonel or retroactively retire her at that rank. Compl. ¶ 26. In this respect, the court has authority to provide equitable relief "incident of and collateral to" a claim for monetary damages. *See* 28 U.S.C. § 1491(a)(2); *see also Passaro v. United States*, 774 F.2d 456, 459 (Fed.Cir.1985) ("Equity, to the extent that it can be administered by the [Court of Federal Claims], exists as an incident of general jurisdiction under the Tucker Act."). Therefore, in Military Pay Act cases, the court is able "to order the correction of military records ... [as an] 'incident of and collateral to' its award of a money judgment." *Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir.1988) (citations omitted).

Nonetheless, with regard to claims for promotions specifically, "absent a statute or regulation entitling a service member to promotion as a matter of law, the [c]laims [c]ourt has no authority to entertain [those] claims." *Voge*, 844 F.2d at 782. This is because the court is not in a position to "'resolve and pass upon the highly complicated questions and problems involved in the [military] promotion procedure.'" *Porter*, 163 F.3d at 1317 (citation omitted); *see also Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed.Cir.2000) ("[a] claim of error in a promotion decision presents a nonjusticiable controversy because there are no statutory or regulatory standards against which a court can review such a decision"); *Adkins v. United States*, 68 F.3d 1317, 1324 (Fed.Cir. 1995) (holding officer's "prayer that the

Court of Federal Claims direct the Secretary to promote him to the rank of colonel plainly was a request for impermissible 'interfere[nce] with legitimate Army matters'") (quoting *Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)); *Sargisson*, 913 F.2d at 922 ("A court lacks the special expertise needed to review officers' records and rank them on the basis of relative merit.").

However, "although the merits of military promotion decisions are nonjusticiable, 'a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy.'" *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed.Cir. 2007) (quoting *Adkins*, 68 F.3d at 1323). "In cases in which procedural violations are alleged, the test or standards against which this court measures the military's conduct are ... the applicable statutes and regulations." *Adkins*, 68 F.3d at 1323 (citing *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir.1993) (holding court may decide whether the military followed its own procedures)); *see also, e.g., Roth v. United States*, 378 F.3d 1371, 1386–87, 1393 (Fed.Cir.2004) (holding Correction Board's decision not to promote was unlawful because plaintiff's Officer Effectiveness Reports were adversely affected by Air Force's violation of its own regulation); *Lewis v. United States*, 458 F.3d 1372, 1380–81 (Fed.Cir.2006) (justiciability not at issue where retired navy officer claimed she was denied promotion based upon an incorrect interpretation of a federal statute). Where "an individual has a 'clear cut legal entitlement' to a position [based upon the Constitution or a statute or regulation of the United States] ... redress may be available in the courts." *Lewis*, 458 F.3d at 1377 (citation omitted).

In the instant case, Major Melendez Camilo has requested that the court promote her to the rank of lieutenant colonel or retroactively retire her at that rank. Compl. ¶ 26. This "plainly [i]s a request for impermissible 'interfere[nce] with legitimate [military] matters.'" *Adkins*, 68 F.3d at 1324 (quoting *Orloff*, 345 U.S. at 94, 73 S.Ct. 534); *see Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383, 1388 (1975) (finding that an Air Force cap-

tain was "erroneously discharged," but refusing to grant plaintiff a promotion to the rank of major because "[c]ourts are generally not in the promotion business"). Furthermore, the Court of Federal Claims would have no authority to promote plaintiff to the rank of lieutenant colonel because such equitable relief would not be "subordinate or collateral to a monetary award," a prerequisite to the court providing equitable relief. *Adkins*, 68 F.3d at 1324 n. 9 (citing *Voge*, 844 F.2d at 781). Accordingly, there is no set of facts or reasonable inferences drawn in plaintiff's favor that would allow the court to order the Air Force to promote plaintiff to lieutenant colonel. Thus, her claim for promotion must fail on the basis of RCFC 12(b)(6). Plaintiff's remaining claims, for back pay and benefits, survive the government's motion to dismiss.

### C. *Judgment upon the Administrative Record*

 Major Melendez Camilo alleges that the Correction Board's action to deny plaintiff correction of her military records and immediate promotion to the rank of lieutenant colonel was "arbitrary and capricious." Compl. ¶ 1. Specifically, she avers that the Correction Board was "prejudiced against her because of her time of leave from the military" when it issued its decision on September 17, 2002, denying plaintiff relief. Pl.'s Resp. at 12. The government responds that Major Melendez Camilo "has not articulated any reason why this [c]ourt should conclude that the [Correction Board] failed to consider her submissions or reached an unreasonable result." Def.'s Mot. at 15 (citing *Bernard v. United States*, 59 Fed.Cl. 497, 501 (2004) ("[T]he plaintiff bears the burden of overcoming the 'strong, but rebuttable, presumption' that the military discharges its duties 'correctly, lawfully and in good faith.'" (citation omitted))).

The administrative record indicates that the Correction Board thoroughly considered the circumstances surrounding Major Melendez Camilo's gap in service and ultimately concluded that its prior decision recommending partial relief had afforded her a fair opportunity to compete for promotion to the rank of lieutenant colonel:

We took note of the Board's previous actions to promote the applicant to the grade of major, return her to active duty, correct her records, and set aside any nonselections for promotion to the grade of lieutenant colonel prior [to] her [ ] receiving two current officer performance reports. After a thorough review of the facts and circumstances of this case, we believe the relief afforded by the Board has provided [Major Melendez Camilo] an opportunity to compete for promotion on a fair and equitable basis.

AR 7 (Denial of Application for Correction of Military Record, Record of Correction Board Proceedings (Oct. 9, 2002)). Major Melendez Camilo does not cite to any particular evidence that would undermine the Correction Board's conclusion but instead avers that "[u]ndoubtedly the fact that [p]laintiff's record reflected a nearly seven-year break in service weighed heavily against her favor when compared to others whose records contained no such data." Pl.'s Resp. at 12. This general assertion fails to satisfy the substantial evidence rule. *Heisig*, 719 F.2d at 1156 (holding that to successfully challenge a decision by a military correction board, the plaintiff must point to substantial evidence showing that the board's conclusions were unsupported by the evidence or were contrary to law). It additionally discounts the Correction Board's prior efforts to promote fairness in the promotion process for Major Melendez Camilo by recommending that (i) she receive two current Officer Performance Reports at the rank of major before being considered non-selected for promotion and (ii) a reaccomplished Officer Effectiveness Report as of December 1987, proposed by Major Melendez Camilo, be inserted in her records to replace the report voided by the Board's May 1995 decision. *See supra*, at 4. *Cf. Yee*, 512 F.2d at 1386 (finding that an Air Force captain had been "erroneously discharged" where the Air Force had "failed either to place an adequate explanation in plaintiff's record of the [five]-year gap in [Officer Effectiveness Reports] (which was admittedly caused by an Air Force error) or to withhold plaintiff's name from submission to [s]election [b]oards until

sufficient time had elapsed for plaintiff to accumulate [Officer Effectiveness Reports]").

Accordingly, because Major Melendez Camilo has not presented substantial evidence showing that the Correction Board was "prejudiced" against her, Pl.'s Resp. at 12, or that the Correction Board's decision was otherwise "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law," *Heisig,* 719 F.2d at 1156, the court concludes that the government is entitled to judgment upon the administrative record.

## CONCLUSION

For the reasons stated, the government's motion to dismiss pursuant to RCFC 12(b)(1) is DENIED, but the government's motion to dismiss pursuant to RCFC 12(b)(6) is GRANTED respecting plaintiff's specific request that the court promote her to lieutenant colonel. In other respects, the government's motion for judgment upon the administrative record is GRANTED.

The Clerk shall enter judgment for the government in accord with this decision. No costs.

It is so ORDERED.